v.

Dewey J. FILLIS, Chief of Police, Police Department, Salt Lake City Corporation, E. G. Cederlof, Assistant Chief of Police, Police Department, Salt Lake City Corporation, Don D. Roberts, Assistant Chief of Police, Police Department, Salt Lake City Corporation, and Jeff L. Bollwinkel, Defendants and Respondents.

No. 15079.

Supreme Court of Utah.

April 3, 1978.

Brian M. Barnard, Salt Lake City, for plaintiffs and appellants.

Roger F. Cutler, Salt Lake City Atty., Ray L. Montgomery, Asst. Salt Lake City Atty., Salt Lake City, for defendants and respondents.

WILKINS, Justice:

All statutory references are to Utah Code Ann., 1953, as amended, unless otherwise stated.

Plaintiff, through his guardian ad litem, filed an action seeking declaratory and injunctive relief in the District Court of Salt Lake County contending that the plaintiff's fingerprints were taken in violation of Sec. 78–3a–55 (formerly designated Sec. 55–10–116) by defendant Bollwinkel (a Salt Lake City patrolman). All other defendants are supervisors of Bollwinkel. Defendants filed a motion to dismiss; and the plaintiff filed a motion for summary judgment. Both motions were supported by affidavits and were considered by the District Court pursuant to Rule 56, Utah Rules of Civil Procedure (Summary Judgment rule). The District Court granted defendants' motion to dismiss, and denied plaintiff's motion for summary judgment.

The following facts are undisputed. Plaintiff was a juvenile, sixteen years of age, when he was taken into custody by Patrolman Bollwinkel as fitting the general description of a young man suspected of assault. On August 15, 1976, plaintiff was photographed for purposes of identification. Plaintiff's photograph was then submitted to the assault victim who identified plaintiff as her assailant. Patrolman Bollwinkel informed plaintiff that he was going to refer the matter to the Salt Lake County Attorney's Office with a recommendation that plaintiff be charged with what would be a felony, if committed by an adult. At the direction of Patrolman Bollwinkel, plaintiff's fingerprints were taken. The records of the case and investigation reports were forwarded to the Salt Lake County Attorney's Office. On September 15, 1976, a petition was filed in the Second District Juvenile Court charging plaintiff with conduct which if committed by an adult, would have been an assault in violation of Section 76–5–102(1)(a). A violation of this section constitutes a Class B Misdemeanor, not a felony. On October 28, 1976, the assault victim saw plaintiff in person for the first time and was asked whether or not she could identify him as the person who had assaulted her. She replied she could not do so. Following this development, the Salt Lake County Attorney moved for a dismissal of the petition with prejudice, which was granted by the Juvenile Court.

The issue presented before this Court is whether the taking of the juvenile plaintiff's fingerprints was in violation of Section 78–3a–55, which provides in relevant part as follows:

Without the consent of the judge, no fingerprints shall be taken of any child taken into custody, unless the case is transferred for criminal proceedings.

The statute gives two situations in which it is permissible to take the fingerprints of a juvenile: (1) where the case is transferred for criminal proceedings or (2) where the consent of the judge is given.

 First, was plaintiff's case transferred for criminal proceedings within the meaning of the statute? Defendants contend that the referral of plaintiff's case to the County Attorney with a recommendation that plaintiff be charged with a felony constitutes a transfer for criminal proceedings. We do not agree. Section 78–3a–25 (formerly designated Sec. 55–10–86) outlines the procedure by which a juvenile case can be transferred for criminal proceedings. Under Section 78–3a–25 the transfer can take place only where: (1) a person fourteen years or older is charged in a petition before the Juvenile Court with conduct which would constitute a felony if committed by an adult; (2) the Juvenile Court conducts a full investigation and hearing and decides that it would be contrary to the best interests of the child or public to retain jurisdiction; (3) the Juvenile Court directs that the child be certified over for criminal proceedings in the District Court, and (4) a criminal complaint is filed in a court of competent jurisdiction charging the juvenile with a felony. In the instant case, this procedure was not followed. Defendant Bollwinkel clearly did not comply with that part of Section 78–3a–25 that limits the taking of juveniles' fingerprints to cases that have been transferred for criminal proceedings.

Second, did a juvenile judge give his consent to the taking of plaintiff's fingerprints?

 Defendants argue that consent was given by virtue of the adoption of Rule 39 of the *Utah State Juvenile Court Rules of Practice and Procedure.* Rule 39 was adopted by the Board of Juvenile Court Judges pursuant to the authorization granted in Section 78–3a–10(b) (formerly designated as 55–10–71(b)) which provides that:

> The board shall establish general policies for the operation of the juvenile courts and shall formulate uniform rules and forms governing practice and procedure, consistent with the provisions of this act . . .

Also see Sec. 78–7–6, which provides that:

> Every court of record may make rules, not inconsistent with law, for its own government and the government of its officers . . .

Rule 39 establishes two situations in which fingerprinting is permissible without the express consent of a juvenile judge: (1) where the juvenile is 14 years or older, in custody, and referred to the Juvenile Court for allegedly committing a criminal act which would be a felony if committed by an adult and (2) where the juvenile is in custody and his fingerprints are needed for an immediate comparison with fingerprints discovered during the investigation of a criminal offense. Rule 39 also outlines the procedure for disposing of fingerprints in these situations. The rule acknowledges the value of fingerprints in investigating criminal acts and states the rule: " . . . provides for reasonable use of fingerprints and for effective protection against their misuse."

We conclude that Rule 39 is not consistent with Section 78–3a–55 in that the rule purports to give a blanket consent and we interpret this section as requiring consent in the form of affirmative action from an individual juvenile judge. It is a well accepted rule that regulations adopted by courts are subordinate and may not contravene a valid statute.[1] And Sections 78–3a–10(b) and 78–7–6 do not serve as validating bases for Rule 39 to authorize a blanket consent—unindividualized by a juvenile judge. It is also noted in this case that even Rule 39 was not followed in that plaintiff was charged in Juvenile Court with a conduct which would have been a misdemeanor if committed by an adult—not a felony as the rule requires.

Reversed and remanded for entry of judgment in favor of plaintiff consistent with this opinion. No costs awarded.

MAUGHAN and HALL, JJ., concur.

---

1. *State ex rel. Nichols v. Cherry,* 22 Utah 1, 60 P. 1103 (1900), *Mulford v. Bamberger,* 76 Utah 136, 287 P. 929 (1930), *State v. Nielsen,* Utah, 522 P.2d 1366 (1974).

ELLETT, Chief Justice (concurring).

I concur only in ordering prints to be given to plaintiff plus costs therefor.

CROCKETT, Justice (dissenting).

It is my opinion that the trial court acted correctly in ruling against the plaintiff. This for two main reasons.

First, the offense which Officer Bollwinkel was investigating and of which plaintiff was suspect, was forcible sexual abuse (U.C.A.1953, Sec. 76–5–404). That offense, if committed by an adult, would be a felony. He therefore proceeded in accordance with the statute in determining that he should have the plaintiff's fingerprints taken. That was the time and circumstance under which the fingerprints were taken and that should conclude the matter.

Nothing that happens subsequent to the lawful taking of plaintiff's fingerprints should retroactively cause their taking to become unlawful. The logic of that conclusion is not altered by the fact that the charge was later reduced to a lesser offense, which incidentally appears to have been a favorable break for the accused. Nor should it be, even though upon a trial, he should be acquitted of the charge. If the ruling be otherwise, there may well be circumstances in which police officers would be effectively prevented from investigating and solving serious crime; and there seems to be plenty of it in which teenagers are involved.

Second, absent any imputation of criminal record, I do not see wherein this plaintiff or anyone else is damaged or disadvantaged by having his fingerprints so recorded in an official file. This is admittedly only true for anyone who intends and desires to be a law abiding and cooperative member of society. For such there are more advantages than disadvantages to having one's fingerprints so taken and filed. They may be a helpful means of identification in case of amnesia, abduction, or perhaps in other circumstances, where doubt may arise and definite identification be required, or even to exculpate one where there is suspicion of crime and fingerprints are involved. Indeed, there have been national campaigns to have the public generally have their fingerprints taken and kept on file for such contingencies and in which hundreds of thousands of people (including this writer) have voluntarily cooperated.

I have a most ardent desire that there be adequate safeguards against any improper intrusions upon personal liberties, or the right of privacy, and to avoid either harm or embarrassment to people with normal sensibilities. But there are some areas where individual desires should be subordinated to the greater good in the interest of the safety and good order of society. In my judgment it does not conform either to the letter or the intent of the law, nor serve any useful purpose, to protect or indulge anyone, especially juveniles, whose attitudes toward law and order are in the formative stages, to accord them all of the benefits of our liberally assured freedoms, and protections of the law, but encourage them to be rebellious and antagonistic to it in refusing to accommodate themselves to reasonable requirements for cooperation in law enforcement.

For these reasons and the fact that I cannot see this case as anything other than a contentious (and incidentally futile [1]) attack on a procedure which is reasonable and necessary for the protection of victims of crime and the safety and good order of society generally, I would affirm the judgment.

---

1. I so state because the record of arrest and fingerprints are forthwith transmitted to the State Bureau of Criminal Identification and to the F.B.I. in Washington.